## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Dec 23, 2014

| | |
|---|---|
| IN RE:<br><br>**JOY MARIE PHILLIPS,**<br><br>        **Debtor.** | **Case No. 13-12959-M**<br>**Chapter 7** |
| **TIFFANY POLLOCK, Personal Representative of the Estate of Frederick E. Phillips, Deceased,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**JOY MARIE PHILLIPS,**<br><br>        **Defendant.** | **Adv. No. 14-01006-M** |

### MEMORANDUM OPINION

Complex problems can have simple solutions.  Moreover, what appears complicated at first blush is not always so.  In this adversary proceeding, the parties have made various and sundry accusations of fraud, misconduct, and other misdealings.  The allegations of malfeasance have not been limited to the parties; counsel have taken their best shots at each other as well.  However, when one separates the vitriol from the facts, the matter becomes much simpler.  So simple, in fact, that summary judgment becomes a real possibility.  The sole question before the Court is whether, under Oklahoma law, a probate estate must file a separate action to recover money or property that the probate estate claims to be the rightful owner of, and, if so, whether the probate estate is governed by the same statute of limitations that govern other civil litigants.  The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[1]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  The issues presented in this matter are core proceedings contemplated by 28 U.S.C. § 157(b)(2)(I).

## Summary Judgment Standard

This matter is before the Court pursuant to the Motion for Summary Judgment ("Defendant's Motion")[2] filed by Joy M. Phillips; Plaintiff's Response[3] thereto filed by Tiffany Pollock, Personal Representative of the Estate of Frederick E. Phillips; and Defendant's Reply.[4]  Summary judgment is available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  "[W]here the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

---

[1]   Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[2]   Docket No. 39.

[3]   Docket No. 42.

[4]   Docket No. 43.

[5]   Fed. R. Civ. P. 56(a), made applicable to this proceeding by Fed. R. Bank. P. 7056. Fed. R. Civ. P. 56 was recently amended, effective December 1, 2010.  "The summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and one word was changed from the previous version—genuine 'issue' became genuine 'dispute.' Rule 56 advisory committee's note (2010 Amendments). But the 'standard for granting summary judgment remains unchanged.' *Id.*" *Higgins v. Potter*, 416 Fed. Appx. 731, 733 n.1 (10th Cir. 2011).

party."[6]  It is well established that

> [a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.[7]

The United States Court of Appeals for the Tenth Circuit has recognized the ruling in *Scott v. Harris* in *Price-Cornelison v. Brooks*.[8]

## Overview

This is a battle between the probate estate of Frederick E. Phillips, represented by Tiffany Pollock, its personal representative ("Pollock" or "Plaintiff") and Joy Phillips ("Ms. Phillips" or "Defendant"), the widow of Frederick E. Phillips.  At issue are five antique cars, or, in the alternative, their value.  Pollock claims the cars are property of the probate estate, while Ms. Phillips claims them as her separate property.  Pollock has known of Ms. Phillips's claim to the cars since August 31, 2011, and has never filed an action against Ms. Phillips to recover the vehicles or the

---

[6]  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)).

[7]  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[8]  524 F.3d 1103, 1120–21 (10th Cir. 2008).

proceeds of their sale.  All Pollock has done is file a motion in the probate court asking that judgment be entered against Ms. Phillips for the value she received from the sale of the vehicles.

After the motion was filed, Ms. Phillips sought relief under Chapter 7 of the United States Bankruptcy Code.  The probate estate claims to be owed the value of the vehicles, and contends that its claims are non-dischargeable under § 523(a)(4) and (6).  The parties have litigated fiercely to date.  Both have filed motions for summary judgment.  As part of the motion for summary judgment filed by Ms. Phillips, she argues that the statute of limitations has run on any claim the probate estate had or may have had against her, and that, as a result, no issue of dischargeability exists before this Court.  Should Ms. Phillips prevail on this issue, all other matters raised by the parties fall by the wayside.

**Findings of Fact**[9]

*The Probate Case*

Frederick E. Phillips ("Mr. Phillips") died a resident of Tulsa County, Oklahoma on June 8, 2011.[10]  His estate is being probated in the Tulsa County District Court, Case No. PB-2011-372 (the "Probate Case" or "Probate Court").[11]  Defendant is the surviving spouse of Mr. Phillips, and they were married at the time of his death.[12]  On June 13, 2011, Defendant was appointed as special administrator of the Estate of Mr. Phillips (the "Probate Estate") pursuant to Letters of Special

---

[9]  There are several disputed facts in this case.  The Court will focus only on facts not in genuine dispute that relate to the statute of limitations defense raised by the Defendant.

[10]  Pre-Trial Order, Docket No. 36, at 3 ¶ 1.

[11]  *Id*.

[12]  *Id*. at 4 ¶ 11.

4

Administrator issued by the court in the Probate Case.[13]  On July 21, 2011, Defendant declined to

serve as the personal administrator of the Probate Estate.[14]  On that same date, Pollock, daughter of

Mr. Phillips, was issued Letters of Administration appointing her personal administrator of the

Probate Estate.[15]

Prior to his death, Mr. Phillips and/or Defendant were in possession of five motor vehicles

(the "Vehicles").[16]  Pollock admits that she is not aware of, or in possession of, a certificate of title

issued to Mr. Phillips for any of the Vehicles.[17]  On or about May 9, 2011, the Vehicles, which were

owned solely by the Defendant and which were never titled in the name of Mr. Phillips, were sold

to Fred Lemons, owner of Tri V Auto Sales, by endorsement of the Defendant's Certificates of Title

to Tri V Auto Sales and delivery on her behalf by Mr. Phillips, as her husband and her agent.[18]  On

or about August 31, 2011, Pollock and her attorney came into possession of a letter from Rod Baker

dated August 30, 2011 (the "Rod Baker Letter").  The Rod Baker Letter advised Pollock that the

Vehicles had previously been sold and the proceeds had previously been delivered to Defendant by

---

[13]  *Id.* at 3 ¶ 2.  The Pre-Trial Order incorrectly reports this date as June 13, 2013.

[14]  *Id.* ¶ 3.

[15]  *Id.  See also* Defendant's Motion, at Docket No. 39, at 2 ¶ 4.  Plaintiff admits these material statements are undisputed.  *See* Plaintiff's Response, Docket No. 42, at 1 ¶ 1.

[16]  The Vehicles are described as: a 1968 Chevrolet Camaro Convertible; a 1966 Volkswagen automobile; a 1976 MG Convertible; a 1968 Chevrolet Chevelle; and a 1958 Impala 2-door hardtop.  *See* Defendant's Motion, Docket No. 39, at 4 ¶ 13.  Plaintiff admits these material statements are undisputed.  *See* Plaintiff's Response, Docket No. 42, at 4 ¶ 6.

[17]  Pre-Trial Order, Docket No. 36, at 4 ¶ 12.  Plaintiff raises an objection in the Pre-Trial Order that this fact is irrelevant to the litigation, but does not otherwise dispute its accuracy.  As noted in the Pre-Trial Order, this objection is overruled.

[18]  Defendant's Motion, Docket No. 39, at 3 ¶ 10.  Plaintiff admits that these material statements are undisputed.  *See* Plaintiff's Response, Docket No. 42, at 2 ¶ 4.

Fred Lemons.[19]

After receipt of the Rod Baker Letter, the only action taken by Pollock prior to the filing of this adversary proceeding was the filing of a "Motion to Require Former Special Administrator to Disgorge and Repay the Estate Funds She Received and Final Account and Petition for Order Allowing Final Account, Determination of Heirship, and Distribution" (the "Probate Disgorgement Motion") in the Probate Case on October 11, 2013, which sought to surcharge the Defendant's distribution and/or disgorge the funds she received from the sale of the Vehicles.[20]  One of the allegations made by Pollock in the Probate Disgorgement Motion is that Defendant, in her capacity as special administrator of the Probate Estate, filed a "Preliminary Inventory and Application to Amend Inventory" (the "Inventory") on August 16, 2011, and that leave to amend the Inventory was granted by the Probate Court on September 29, 2011.[21]  The contents of the Inventory are not part of the record before this Court.  Pollock has never filed a separate civil action against the Defendant to recover the Vehicles or their value prior to the filing of this adversary proceeding.[22]

---

[19]  Pre-Trial Order, Docket No. 36, at 4 ¶ 7.  Plaintiff raises an objection in the Pre-Trial Order that this fact is irrelevant to the litigation, but does not otherwise dispute its accuracy.  As noted in the Pre-Trial Order, this objection is overruled.

[20]  Defendant's Motion, at Docket No. 39, at 6 ¶ 22.  Plaintiff admits that these material statements are undisputed.  *See* Plaintiff's Response, Docket No. 42, at 7 ¶ 15.  *See also* Pre-Trial Order, Docket No. 36, at 4 ¶ 10. Plaintiff raises an objection in the Pre-Trial Order that this fact is irrelevant to the litigation, but does not otherwise dispute its accuracy.  As noted in the Pre-Trial Order, this objection is overruled.

[21]  *See* Docket No. 42-5, at 3¶ 4; Docket No. 39-12, at 2 ¶ 4.

[22]  Defendant's Motion, at Docket No. 39, at 6 ¶ 20.  Plaintiff admits that these material statements are undisputed.  *See* Plaintiff's Response, Docket No. 42, at 7 ¶ 13.  *See also* Pre-Trial Order, Docket No. 36, at 4 ¶ 8.  Plaintiff raises an objection in the Pre-Trial Order that this fact is irrelevant to the litigation, but does not otherwise dispute its accuracy.  As noted in the Pre-Trial Order, this objection is overruled.

*The Bankruptcy Case and the Adversary Proceeding*

On December 23, 2013, Defendant filed an original petition for relief under Chapter 7 of the United States Bankruptcy Code.[23]  Pollock, as personal representative of the Probate Estate, filed this adversary proceeding against Ms. Phillips on February 10, 2014.  In this adversary proceeding, Pollock alleges that 1) the Vehicles were property of the Probate Estate; 2) Defendant sold the Vehicles while acting as special administrator of the Probate Estate and retained the funds for her own benefit; 3) Defendant's failure to file an accounting in the Probate Case and failure to turn over the Vehicles or their proceeds to Pollock was a violation of Defendant's fiduciary duty as a special administrator; and 4) such sale and failure to remit proceeds was a wilful and malicious injury to the Probate Estate.  Defendant alleges that the Vehicles were her own personal property and never part of the Probate Estate.  She argues that she had no obligation to account for the proceeds in the Probate Case, and therefore cannot be found in violation of any fiduciary duty for failing to do so.  Defendant argues, in the alternative, that *even if* Pollock had a valid claim, she waited too long to press her case in a competent court of law.  Defendant has consistently asserted an affirmative defense that Pollock's claims are time-barred under Oklahoma law.  Defendant now seeks summary judgment on this issue.

## Conclusions of Law

*Authority of a Probate Court Under Oklahoma Law*

In Oklahoma, "[p]robate actions are strictly statutory and the district court in such

---

[23] Case No. 13-12959-M.

7

proceedings has limited jurisdiction as prescribed by statute."[24]   Section 1 of title 58 of the

Oklahoma Statutes (hereafter "58 O.S. § 1") defines the jurisdiction of the district court *sitting in*

*probate* as follows:

> A.  The district court has *probate jurisdiction*, and the judge thereof power, which must be exercised in the cases and in the manner prescribed by statute:
>
> > 1.  To open and receive proof of last wills and testaments, and to admit them to proof and to revoke the probate thereof, and to allow and record foreign wills;
> >
> > 2.   To grant letters testamentary, of administration and of guardianship, and to revoke the same;
> >
> > 3. To appoint appraisers of estates of deceased persons and of minors and incapacitated persons;
> >
> > 4.  To compel personal representatives and guardians to render accounts;
> >
> > 5.  To order the sale of property of estates, or belonging to minors or to incapacitated persons;
> >
> > 6.  To order the payments of debts from estates or guardianships;
> >
> > 7.  To order and regulate all distribution of property or estates of deceased persons;
> >
> > 8. To compel the attendance of witnesses and the production of title

---

[24]  *In re Estate of Steen*, 909 P.2d 63, 65 (Okla. Civ. App. 1992), *aff'd sub nom. Estate of Steen v. Epperson*, 909 P.2d 62 (Okla. 1995) (hereafter "*Steen*") ("While we concur in the findings expressed [by the appellate court], we are of the view that wherever the term "jurisdiction" appears, in reference to the jurisdiction of the district judge sitting in probate, the term "authority" be used instead. Although, under the 1967 constitutional amendment a district judge now has unlimited "jurisdiction" to hear probate matters, the "authority" of the district judge remains limited by the statutory restrictions set forth in the probate statutes until such time as the legislature amends them.") (finding that appellate opinion, as amended, should be accorded precedential value). *See also Estes v. Estes*, 921 P.2d 346, 347 n.1 (Okla. 1996) ("After these amendments, the issue is not whether the district court has jurisdiction, but whether interdocket remedial boundaries preclude a district court from exercising its authority.").

deeds, papers, and other property of an estate, or of a minor, or incapacitated persons;

9.  To exercise all the powers conferred by this chapter or by other law;

10.  To make such orders as may be necessary to the exercise of the powers conferred upon it; and

11.  To appoint and remove guardians for infants, and for persons insane or who are otherwise incapacitated persons; to compel payment and delivery by them of money or property belonging to their wards, to control their conduct and settle their accounts.[25]

"While a probate proceeding is equitable in nature, the administration of a deceased's estate is not an 'action at law' or an 'action in equity', but is a 'probate proceeding.'"[26]  As the Supreme Court of Oklahoma has explained:

Before the Judicial Article of the Oklahoma Constitution[27] and the present [20 O.S. 1991] § 91.1[28] became effective on January 13, 1969, the remedial track for probate had its point of inception in the since-defunct county court. Although probate *now* begins in district court, *interdocket remedial boundaries survive*. *The mainstream probate issues and procedural stages remain the same. These are confined to: (1) ascertaining whether decedent died testate or intestate, (2) if testate, what testamentary disposition, if any, may be admitted to probate, (3) the administration of the estate's assets and (4) the final account and distribution.*

---

[25] Okla. Stat. tit. 58, §1(A) (2011) (emphasis added).

[26] *In re Estate of Dilley*, 919 P.2d 458, 460 (Okla. Civ. App. 1996) (internal citation omitted).

[27] *See Williams v. Mulvihill*, 846 P.2d 1097, 1102 n.15 (Okla. 1993) ("Art. 7, Okl. Const. Article 7 was ratified in 1907. Its repeal and the enactment of what is now Article 7 was proposed by Laws 1967, p. 698, H.J.R. No. 508 and adopted at election July 11, 1967. The pertinent terms of Article 7, § 1, Okl. Const., are: 'The *judicial power of this State shall be vested in* ... a Supreme Court [and] ... *District Courts*....' [Emphasis supplied.]").

[28] *Id.* at n.16 ("20 O.S. 1991 § 91.1. Adopted verbatim from Laws, 1968, c. 162, § 1, eff. Jan. 13, 1969, its pertinent terms are: 'The *District Courts* of the State of Oklahoma are the *successors to the jurisdiction of* all other courts, including ... *the County Courts*....' [Emphasis supplied.]").

> Probate judicature is *limited* in scope. Its remedial range extends to accommodate only *some* disputes that may arise in the course of an administration between *a total stranger to the estate* and *its executor*.[29]

Elsewhere, the court has made clear that

> Title 58 O.S. § 1 specifically sets forth the statutory powers and duties of the district court *sitting in a probate matter* which does include *distribution of property of the estate*, but does not empower the district court to *determine title to property which is not part of the estate*.[30]

As a matter of law, a court acting under the authority of 58 O.S. § 1 has no authority over "property held adversely to the [probate] estate."[31]

In order to determine title to property that is not facially part of the probate estate, the parties ***must proceed in a separate civil action*** before the district court.[32]  The Oklahoma statutes provide for a ***separate civil action*** related to a probate proceeding in certain circumstances:

> C.  The district court which has jurisdiction and venue of the administration of any estate is granted unlimited concurrent jurisdiction and venue to hear and determine:
>
> 1.  In whom the title to any property is vested, whether the property is real, personal, tangible, intangible, or any combination thereof;
>
> 2.  Rights with respect to such property as to all persons and entities;
>
> 3.  Whether or not such property is subject to the jurisdiction of the court in the decedent's estate; and
>
> 4.  Issues relating to trusts or issues involving a guardian or ward that may arise.

---

[29]  *Id.* at 1102 (emphasis in original) (footnotes omitted except as provided *supra* notes 27 & 28).

[30]  *Steen*, 909 P.2d at 65 (emphasis added).

[31]  *In re Estate of Estes*, 983 P.2d 438, 444 (Okla. 1999).

[32]  *Steen,* 909 P.2d at 66 ("To determine ownership of property as between the estate and a third party *in a probate proceeding* is fundamental error.") (emphasis added).

> D.  *For proceedings under subsection C of this section, service of notice and process shall be required as in other cases and the provisions of the Oklahoma Pleading Code, Section 2001 et seq. of Title 12 of the Oklahoma Statutes, shall be followed.*[33]

Although a court *sitting in probate* may resolve some disputes regarding title to property when the dispute is between heirs of the estate, the Supreme Court made clear in its affirmance of *Steen*, that this does not apply where the property at issue lies outside the probate estate.[34]  It is the character of the property in the dispute, not the character of the parties, that determines whether the district court *sitting in probate* has authority to hear a particular dispute.[35]  Where an heir claims property adversely to the probate estate, he or she is treated as though the claim were made by a stranger to the estate.[36]  Where the property lies presumptively outside the estate, the district court *sitting in probate* is without authority to inquire further into title without the filing of a separate civil action.[37]

In *Steen*, a mother and daughter held a certificate of deposit and other bank accounts in joint tenancy with rights of survivorship.  Upon the mother's death, the daughter was appointed executrix and filed an inventory of her mother's estate.  The inventory did not include the CD or bank accounts.  Her sisters, as additional heirs, objected.  The district court *sitting in probate* determined

---

[33] Okla. Stat. tit. 58, §1(C–D) (2011) (emphasis added).

[34] *Steen*, 909 P.2d at 66.  *See also Estes v. Estes*, 921 P.2d 346, 348 (Okla. 1996).

[35] *Id.* ("The fact that this dispute involves the administrator and heirs of the estate does not in and of itself empower the district court to determine title to property outside of the estate.").

[36] *Id.* (citing *In re Kelly's Estate*, 269 P. 282, 284 (Okla. 1928)).  *See also In re Estate of Estes*, 983 P.2d 438, 444 (Okla. 1999).

[37] *Id.* at 67–68.  *See also Williams v. Mulvihill*, 846 P.2d at 1103 ("An extra-probate issue or controversy cannot be litigated within a probate's restrictive remedial range.  It lies beyond the inter-docket boundary that separates the various remedial tracks within the district court's cognizance.").

that title belonged to the decedent and imposed a constructive trust on the CD and accounts in favor

of the heirs of the estate.  On appeal, the court found that the district court had exceeded its authority

under the probate statute.  The court stated:

> Here, the certificate of deposit and bank accounts showed the creation of joint
> tenancy with right of survivorship in compliance with 60 O.S. 1981 § 74. As such,
> there was a presumption that [the executrix] was the legal owner of those accounts
> as her separate property outside of the estate. *Urban v. Jackson*, 434 P.2d 889 (Okla.
> 1967); *Baker v. Baker*, 710 P.2d 129 (Okla. App. 1985). As her presumptively
> separate property, the district court was without jurisdiction to delve further into title
> in this probate proceeding. *Roach v. Roach*, supra; *In re Kelly's Estate*, supra. Any
> evidence to rebut the presumption of joint tenancy created by the certificate of
> deposit and bank accounts could only be submitted in a separate proceeding brought
> in district court apart from probate matter. The district court erred in hearing
> evidence concerning title to these accounts, in determining title and in imposing the
> constructive trust thereon while sitting in the probate proceeding.[38]

The court found that it was "fundamental error" to determine ownership of property as between the

estate and a third party *in a probate proceeding.  Steen* holds that this principle applies ***even when

the third party is an heir or administrator***, as long as he or she is not attempting to claim property

of the estate, but is instead defending property adverse to the estate.[39]

Plaintiff cites the Court to the case of *In re Estate of Estes* (hereafter "*Estes")* for the

unremarkable proposition that "[a]n order surcharging a beneficiary's inheritance is premature until

a determination of the heirs and each's share of the estate."[40]  A closer reading reveals a case that

is factually on point to the case at bar.  In *Estes*, the plaintiff filed a motion in probate court seeking

to have the personal representative removed and to recover property of the decedent allegedly taken

before the decedent's death.  The plaintiff also filed a separate civil action against the personal

---

[38] *Steen*, 909 P.2d at 67–68.

[39] *Id.* at 66.

[40] Plaintiff's Response, Docket No. 42, at 13 (citing 983 P.2d 438, 447 (Okla. 1999)).

representative requesting recovery of the property.  A single district court judge was assigned both proceedings.  In some respects the two proceedings were treated as consolidated, such as being heard at the same time.  The Supreme Court of Oklahoma found that, while it was not error to consider all of the issues in a single hearing, it was error to treat the cases as consolidated.  The court held that "neither the court in the probate proceedings or the court in the civil case had authority to resolve all issues tendered[.]"[41]  The court noted that

> In the present case, inter-docket boundaries limited probate to "(1) ascertaining whether the decedent died testate or intestate, and if testate, (2) what testamentary disposition, if any, may be admitted to probate, (3) the administration of the estate's assets and (4) the final account and distribution." Okla. Stat. tit. 58, § 1 (1991); *Wilson v. Kane*, 1993 OK 65, ¶ 6, 852 P.2d 717, 720; *Williams v. Mulvihill*, 1993 OK 5, ¶ 8, 846 P.2d 1097, 1102. Where the face of assets show no interest by the estate, probate is not the proper forum in which to settle a title dispute.  *In re Estate of Kizziar*, 1976 OK 114, ¶ 5, 554 P.2d at 793.  Probate's authority to determine title to property does not extend to disputes over property held adversely to the estate. *Id.* [The personal representative] was not claiming title to the property as an heir, but as a surviving joint tenant, donee, and named beneficiary of the property. [Plaintiff]'s attempt to recover property held in [personal representative]'s name, not the estate's, does not fall within the limited parameters of probate's domain.[42]

The court found that it was necessary to have a ***separate civil proceeding*** to determine title to property held adversely to the estate, and for the non-probate court to impose a constructive trust for the benefit of the probate estate on the property improperly diverted by the personal representative.  ***Only then*** could the property be considered part of the estate in the probate proceeding.[43]  The district court, sitting in probate, then had authority to distribute that property among the heirs and to surcharge the personal representative for any indebtedness ***as determined***

---

[41] *Estes*, 983 P.2d at 444.

[42] *Id.*

[43] *Id.* at 447.

*in the civil case.*[44]   In the absence of a judgment in the civil case, there would be no indebtedness to surcharge in the probate matter.

The Supreme Court of Oklahoma also addressed the issue of the probate court's authority to determine title to property in *Estes v. Estes*.[45]   In that case, the plaintiff filed a civil action to seek an accounting, appraisal, and partition of property held by an heir that had been omitted from the estate inventory filed with the district court *sitting in probate.*   The defendant/heir moved for dismissal and argued that the civil action was a collateral attack on the inventory in the probate matter.   Because the defendant had possession of the personal property at issue, a presumption of ownership was created in the defendant.   Following *Steen,* the court agreed that where the dispute involved title to property that was presumptively held by a stranger to the estate, it could not be heard by the district court *sitting in probate*, and the matter was properly brought in the district court sitting in its non-probate capacity.[46]

*Requirement for a civil determination of ownership of the Vehicles*

The Oklahoma Vehicle License and Registration Act states that "[i]t is the intent of the Legislature that the owner or owners of every vehicle in this state shall possess a certificate of title as proof of ownership and that every vehicle shall be registered in the name of the owner or owners thereof."[47]   It also provides that "[t]he owner of every vehicle in this state shall possess a certificate

---

[44]  *Id.*

[45]  921 P.2d 346 (Okla. 1996).

[46]  *Id.* at 348.

[47]  Okla. Stat. tit. 47, § 1103 (2011).

of title as proof of ownership of such vehicle,"[48] and defines a "certificate of title" as "a document which is proof of legal ownership of a motor vehicle as described and provided for in Section 1105 of this title."[49]  This system works to create a legal presumption of ownership in the party whose name is on the title.[50]

Defendant has provided documents for each of the Vehicles, in varying degrees of completeness, that purport to prove her ownership.  Pollock argues that these documents as presented are inadmissible and otherwise insufficient to establish Defendant's ownership vis-à-vis the Probate Estate.  Pollock misses the point.  Pollock admits that she is not aware of, or in possession of, a certificate of title issued to Mr. Phillips for any of the Vehicles.  This admission establishes that the Probate Estate has no apparent interest in the Vehicles.  In the absence of a judgment by a court of competent authority, the Vehicles cannot be considered property of the Probate Estate over which the district court, sitting in probate, would have authority to distribute amongst the heirs.[51]

Pollock acknowledges that she never filed a separate civil action against Defendant for a determination by the district court of ownership of the Vehicles or their proceeds.  Nor did she file

---

[48] *Id.* § 1105(B) (2011 & Supp. 2012) (with exceptions that do not apply here).

[49] *Id.* § 1102(3) (2011 & Supp. 2014).  *See also Mitchell Coach Mfg. Co. v. Stephens*, 19 F. Supp. 2d 1227, 1233 (N.D. Okla. 1998) ("Now, under the Oklahoma Act, certificates of title are 'proof of ownership.'").

[50] *Mitchell Coach Mfg. Co.*, 19 F. Supp. 2d at 1233.

[51] The Court is *not* ruling on the merits of whether Defendant was the owner of the Vehicles.  The Court only finds that there is sufficient evidence to find that the Probate Estate held no apparent interest in the Vehicles, and any effort to bring them into the Probate Estate required a separate civil lawsuit.

an action for recovery of the Vehicles or their proceeds.[52]  Her only action with regard to the

Vehicles came in the form of the Probate Disgorgement Motion filed with the Probate Court on

October 11, 2013, which sought to surcharge the Defendant's distribution and/or disgorge the funds

received from the sale of the Vehicles.[53]  As discussed *supra*, that pleading was insufficient to

achieve Pollock's goals, because the Probate Court did not have the authority to determine

ownership of the Vehicles in the absence of a separate civil proceeding.

*Application of limitation statutes in civil litigation*

Defendant argues that Pollock is time-barred under Oklahoma law from bringing any action

against her with respect to the Vehicles.  This Court agrees.  Oklahoma law provides:

> Civil actions other than for the recovery of real property can only be brought within
> the following periods, after the cause of action shall have accrued, and not
> afterwards:
>
> * * * * *
>
> > 3. Within two (2) years: An action for trespass upon real property; an
> > action for taking, detaining, or injuring personal property, including
> > actions for the specific recovery of personal property; an action for
> > injury to the rights of another, not arising on contract, and not
> > hereinafter enumerated; an action for relief on the ground of fraud -
> > the cause of action in such case shall not be deemed to have accrued
> > until the discovery of the fraud[.][54]

---

[52]  In the Complaint, Docket No. 1, at 4, Pollock asserts that she "made numerous
informal and formal demands to the Debtor for the repayment of the funds she received from the
sale of the five (5) automobiles owned by the Estate."  There is no evidence that these were
legally cognizable demands or somehow rose to the level of a formal civil action against the
Defendant.

[53]  Defendant's Motion, Docket No. 39, at 6 ¶ 22.  Plaintiff admits that these material
statements are undisputed.  *See* Plaintiff's Response, Docket No. 42, at 7 ¶ 15.  *See also* Pre-
Trial Order, Docket No. 36, at 4 ¶ 10.

[54]  Okla. Stat. tit. 12, § 95(A)(3) (2011).

According to the Supreme Court of Oklahoma,

> Pleading the statute of limitations is an affirmative defense, and the burden is on a defendant to prove that a plaintiff's action is barred by the applicable statute. The date where the period of limitations starts, when the plaintiff knew, or in the exercise of reasonable diligence should have discovered the act giving rise to the claim, is usually determined from the facts and circumstances of the particular case, and where reasonable persons may reach conflicting opinions, the issue is a question for determination by the finder of fact.[55]

In order to establish that the Vehicles were included in the Probate Estate, Pollock was required to bring a separate civil action against the Defendant within the time allowed by statute. Defendant asserts that whether characterized as an action for replevin, fraud, or a declaratory judgment as to ownership of the Vehicles, the action would fall with the ambit of section 95(A)(3) of title 12 of the Oklahoma Statutes. Pollock does not suggest that a different limitations statute should apply to Pollock's claim against Defendant. Pollock argues that limitations statutes do not apply to an equitable action to surcharge a former administrator of a probate estate. She does not provide any authority to suggest that such statutes would not apply in a related civil action for the recovery of personal property.

The parties do not dispute that the Vehicles were in the possession of Mr. Phillips and/or Defendant prior to his death. After her appointment as special administrator, Defendant filed an Inventory in the Probate Case on August 16, 2011.[56] Given the Court's obligation to make all factual inferences in favor of Plaintiff as it considers Defendant's Motion, the Court infers that the Inventory did not list the Vehicles as assets of the Probate Estate. The Inventory was thus a public

---

[55] *Million v. Million*, 292 P.3d 21, 22 (Okla. 2012) (footnotes and citation omitted).

[56] *See* Docket No. 42-5, at 3 ¶ 4. As stated *supra*, this fact was asserted by Pollock in a pleading filed before the Probate Court. Although it was not raised in this proceeding, the Court has no reason to doubt its accuracy.

declaration that Defendant did not consider the Vehicles to be property of the Probate Estate, and put Pollock on notice of Defendant's position.  On or about August 31, 2011, Pollock and her attorney came into possession of the Rod Baker Letter, which advised Pollock that the Vehicles had been sold and the proceeds delivered to Defendant by Fred Lemons.  It is beyond dispute that upon receipt of the Rod Baker Letter, Pollock was on notice that the Vehicles existed and that Defendant had retained the proceeds of their sale.  The Court will use the date of August 31, 2011, the date of Pollock's receipt of the Rod Baker Letter, as the date the statute of limitations began to run.  Pollock had notice on that date that Defendant asserted an interest in the Vehicles adverse to the Probate Estate.  Applying section 95(A)(3) of title 12 of the Oklahoma Statutes, Pollock had two years from August 31, 2011, to file a separate civil action to recover the Vehicles or their proceeds or otherwise seek a judgment against Defendant.  No such action was filed.  The Court finds that any such action is now time-barred.

*Dischargeability*

In a recent decision, this Court held that

In order for § 523(a)(2)(A) to come into play, there must be a debt that is subject to discharge. If there is no debt, there is no issue of dischargeability. The Bankruptcy Code defines a debt as "liability on a claim." A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"

The definition of what constitutes a claim is arguably one of the broadest definitions found in the Bankruptcy Code. There is one significant limitation on the definition of a claim: in order for there to be a claim under the Bankruptcy Code, it must be actionable under applicable state law.[57]

---

[57] *Broyles v. Nichols (In re Nichols)*, 509 B. R. 722, 725–26 (Bankr. N.D. Okla. 2014) (footnote omitted).

Although that case dealt with a different part of § 523, the ruling is applicable here.  If there is not a claim that can be recognized as a matter of state law, there is not a claim that can be the subject of a dischargeability action.

*Dischargeability pursuant to § 523(a)(4)*

In an attempt to escape the statute of limitations defense, Pollock focuses on Defendant's fiduciary duties stemming from her brief stint as a special administrator of the Probate Estate. Pollock describes her claim as arising out of "defalcation while acting in a fiduciary capacity." Pollock claims that she is owed a non-dischargeable debt because "Defendant breached her fiduciary duties to the Estate of Frederick E. Phillips, Deceased, by failing to turn over monies to the probate estate she obtained from selling five cars that were estate property."[58]  Because probate is an equitable proceeding, Pollock contends that there is no time limitation on an attempt to surcharge an administrator for self-dealing.[59]  The argument assumes that the Vehicles were property of the Probate Estate.  This "fact" has never been established by a court of competent jurisdiction. Moreover, as explained *supra*, the statute of limitations on any such action has run.  As a result, the argument is over before it begins.

A discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"[60]  Two elements must be established to except a debt from discharge under § 523(a)(4): (1) there must be a showing of defalcation; and (2) the debtor must have been acting in

---

[58]  Plaintiff's Response, Docket No. 42, at 11.

[59]  *Id.*

[60]  § 523(a)(4).

a fiduciary capacity.[61]  This Court has previously held that

> Section 523(a)(4) clearly qualifies the term "defalcation" by "[t]he phrase 'while acting in a fiduciary capacity.'"  Therefore, "[t]here is no need to consider whether a debtor has committed 'fraud or defalcation' unless it is first determined that debtor was 'acting in a fiduciary capacity.'"[62]

Pollock seeks to hold Defendant liable in her capacity as special administrator, stating that Defendant's failure to list the Vehicles in an accounting and turn them (or the proceeds of their sale) over to Pollock was a violation of Defendant's fiduciary duty to the Probate Estate.  She characterizes this failure as a defalcation of the sort that would be non-dischargeable under § 523(a)(4).

As a special administrator, Defendant owed certain fiduciary duties to the Probate Estate.[63] "The role of a special administrator is to collect and take charge of the estate of the decedent when there is a delay in granting letters testamentary or of administration."[64]  "The duties of such special administrator are specific and prescribed by statute (58 O.S.1941 §§ 211, 215) and are chiefly to collect and take charge of the estate and exercise such powers as may be necessary to preserve the same pending the appointment of administrator[.]"[65] The powers of a special administrator cease

---

[61] *Hubanks v. Jouett (In re Jouett)*, 512 B.R. 277, 292 (Bankr. N.D. Okla. 2014).

[62] *Smolen v. Hatley (In re Hatley)*, 227 B.R. 753, 756 (Bankr. N.D. Okla. 1998) (citations omitted), *aff'd*, 227 B.R. 757 (10th Cir. BAP 1998), *aff'd*, 194 F.3d 1320 (10th Cir. 1999).

[63] *See, e.g., Hooker v. Hoskyns*, 328 P.2d 404, 414 (Okla. 1958) ("While it is true that the authority of the special administrators is somewhat limited, and that they were at all times subject to the authority of the county court, it is also true that it was their statutory duty to conserve the estate and protect the same from loss.").

[64] *In re Estate of Davis*, 253 P.3d 387, 389 (Okla. Civ. App. 2011) (*citing* Okla. Stat. tit. 58, § 211).

[65] *Jersak v. Risen*, 152 P.2d 374, 376 (Okla. 1944).

upon the probate court's granting of letters of administration,[66] except that the special administrator remains obligated to render an account on oath of its proceedings in the same manner as other administrators.[67] "The purpose of the accounting is to enable the trial court to determine whether the special administrator performed its duty of collecting and preserving the assets of the estate."[68]

If a special administrator fails to provide the required accounting, the probate court has the power to order him or her to appear and "render a full account, on oath, of any monies, goods, chattels, bonds, accounts, or other property or papers belonging to the estate which have come to his possession in trust for the executor or administrator, and of proceedings thereon[.]"[69] But, as the Oklahoma Supreme Court has stated:

> Section 295's remedial range reaches *no farther* than to facilitate *discovery of estate assets. Although the accounting phase may still remain inconclusive, its pendency does not adversely affect the finality status of the order tendered here for our review.* The cited section is *no* authority for an in-probate *judgment against a stranger like Williams for the recovery of unaccounted-for money or for the return of property acquired at an infirm or questionable sale*. Rather, the estate's recapture of income . . . presents an *extra-probate controversy*.[70]

Contrary to the assertions by Pollock, section 295 of title 58 of the Oklahoma Statutes does not extend the probate court's authority to order the recovery of unaccounted for property.   A court sitting in probate can require the special administrator to account "*only for funds and property*

---

[66] Okla. Stat. tit. 58, § 216 (2011).

[67]  *Id.* § 217.

[68]  *In re Estate of Davis*, 253 P.3d at 390.

[69]  Okla. Stat. tit. 58, § 295 (2011).

[70]  *Williams v. Mulvihill*, 846 P.2d 1097, 1103 & n.24 (Okla. 1993) (The court added that "[a]n *extra-probate issue or controversy cannot be litigated within a probate's restrictive remedial range.  It lies beyond the inter-docket boundary that separates the various remedial tracks within the district court's cognizance.*").

coming into his hands which are *assets of the estate*."[71]

What Pollock fails to grasp is that as things stand today, the Vehicles are not part of the Probate Estate.  In the absence of an order by a court of competent authority, i.e., a non-probate court, finding that Defendant holds the Vehicle proceeds in trust for the Probate Estate, Defendant has no obligation to include the Vehicles in her accounting or turn anything over to Pollock.  As discussed *supra*, Pollock is now time-barred from seeking such a judgment.  Therefore, although Defendant owed certain fiduciary duties to the Probate Estate, it was not a defalcation of those duties to refuse to account for the Vehicles or to turn over their proceeds.

*Dischargeability pursuant to § 523(a)(6)*

A discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"[72]  "An act of conversion, if willful and malicious, falls within the scope of § 523(a)(6)."[73]   A "threshold requirement to a determination of non-dischargeability under 11 U.S.C. § 523(a)(6) premised on conversion is whether the plaintiff had a property interest in the converted property."[74]

Pollock argues that Defendant injured the Probate Estate by "withholding proceeds from the sale of Estate property and retaining the profits for her own use and benefit[.]"[75]  Again, Pollock has

---

[71]  *Wilson v. Kane*, 852 P.2d 717, 723 (Okla. 1993) (emphasis in the original).

[72]  § 523(a)(6).

[73]  *Herman v. White (In re White)*, 519 B.R. 832, 839 (Bankr. N.D. Okla. 2014).

[74]  *Cody Farms, Inc. v. Deerman (In re Deerman)*, 482 B.R. 344, 370 (Bankr. D.N.M. 2012).

[75]  Complaint, Docket No. 1, at 5 ¶ 23.

not established that the Vehicles were property of the Probate Estate. She is now time-barred from asking a court to make such a determination. Therefore she is unable to prove her case that Defendant converted Probate Estate property. The cause of action under § 523(a)(6) fails as a matter of law.

*Attorney's Fees*

Ms. Phillips seeks an award of attorney's fees in this action. She has not cited and the Court is not aware of any provision in the United States Bankruptcy Code or Oklahoma state law allowing for such a fee award.[76] The Court must presume that Ms. Phillips seeks her attorney's fees as the prevailing party in this adversary proceeding.

With respect to the issue of awarding attorney's fees, this Court has already expressed its opinion that fees in bankruptcy cases shall not be shifted absent a statutory or contractual basis for doing so:

> The award of attorneys' fees to a prevailing party runs contrary to established principle. As another bankruptcy court has noted:
>
>> [I]n absence of any statutory authority to award attorneys' fees, the Court will adhere to the "American Rule," which provides that in cases that are based upon or involve federal law, attorneys' fees are not allowable absent a statutory basis or enforceable contract between the parties.
>
> *In re Baker*, 205 B.R. 125, 135 (Bankr. N.D. Ill. 1997) (citations omitted). The policy consideration underlying the American Rule
>
>> is that because "litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the

---

[76] Section 523(d) allows a debtor to recover his or her attorney's fees where a creditor requests a determination that a consumer debt is non-dischargeable under § 523(a)(2) and the court determines that the position of the creditor was not substantially justified. The section is not applicable here.

> poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel."

*Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997) (citations omitted). Under the American Rule, attorneys' fees are not considered as an element of damages which a party suffers as a result of litigation. This Court believes the American Rule is applicable to bankruptcy cases and will not shift fees between the parties as a matter of course.[77]

*Nichols* remains good law. Absent a statutory or contractual basis, the Court declines to enter an award of attorney's fees.[78] Each party shall bear its fees and costs in this adversary proceeding.

### Conclusion

The Court finds that pursuant to section 95(A)(3) of title 12 of the Oklahoma Statutes, Pollock is barred from asking this or any court for a determination regarding ownership of the Vehicles. As such, she is unable to prove that the Vehicles are property of Mr. Phillips's probate estate. In the absence of such proof, the Court cannot find that Defendant violated any fiduciary duty when she failed to account for or turn over the Vehicles or their proceeds to Pollock. Nor can the Court find that Pollock or Mr. Phillips's probate estate suffered legally cognizable injury due to Defendant's failure to turn over the Vehicles or their proceeds. The Court concludes that Pollock is unable to establish a claim against the Defendant. Where there is no claim, there are no issues relating to dischargeability of a claim.

Defendant's Motion is granted. The granting of Defendant's Motion renders moot Plaintiff's Motion for Summary Judgment.[79] In addition, Plaintiff's Objection to Defendant's Affidavit and

---

[77] *In re Nichols,* 221 B.R. 275, 278 (Bankr. N.D. Okla. 1998) (hereafter *"Nichols"*).

[78] If there is state law supporting a fee award that might somehow apply here, Ms. Phillips has failed to present that law to the Court.

[79] Docket No. 38.

Other Evidence and/or Motion to Strike Defendant's Affidavit in Support of her Motion for Summary Judgment[80] are also rendered moot by this decision, and are hereby overruled.  This adversary proceeding shall be dismissed with prejudice.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 23rd day of December, 2014.

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6842.3

_____

[80] Docket No. 41.

25